Case No. 22-6078, Leatha Taylor et al. v. BristolMyers Squibb Co. et al. Argument not to exceed 15 minutes per side. Ms. Smith, you may proceed. Ms. Smith, on behalf of the plaintiff's appellant, I'd like to reserve five minutes for rebuttal. Great. This is a product liability case where the defendant's drug, saxagliptin, caused plaintiffs to suffer heart failure. Plaintiff's expert, Dr. Goyle, relied on the defendant's own double-blind, randomized controlled trial called SAVR. Nobody is calling SAVR junk science. They're not going to call SAVR junk science today. SAVR is not junk science. SAVR showed a shocking, statistically significant 27% increased risk of hospitalization for heart failure. This is a study with over 16,000 participants, 26 countries. Double-blind, randomized controlled trials like SAVR are at the top of the hierarchy of scientific evidence. They're the best science we have. They're referred to as the gold standard. Nobody disputes they're referred to as the gold standard. They're the gold standard. No one disputes that SAVR showed that statistically significant 27% increased risk of hospitalization for heart failure, the injury that plaintiffs allege in this case. Because of that, 27... It says on its face. It disclaims on its face what you're saying, the conclusions that you're trying to draw from it, right? I mean, it's not a study about general causation. It's an association. Your expert has to figure out how to take it from an association to causation. That's something that gets done in this country all the time. And an experienced district judge said it wasn't good enough in this case. And I'm not sure if that was an abuse of discretion or not. Why was it? It was an abuse of discretion because the way that Dr. Goyle gets excluded, the reason we're here today, we've got this eminently qualified cardiologist, triple board certified epidemiologist, and we've got the undisputed gold standard of scientific evidence, top of the pyramid, top of the hierarchy. So, right, why are we here? How does this guy get excluded giving opinions based on their own study? That's the gold standard. Isn't this the gold standard, though, for showing correlation, though, not causation? And I don't think anyone is disputing Dr. Goyle's qualifications. That's not really before us. The issue that's before us is whether or not his reliance was reasonable. Well, reasonable is not really the right word, but whether or not this was a reliable way to establish causation. What evidence is there that this is reliable and that the district court erred in saying that it wasn't reliable for purposes of causation? Yes, so we get here because of erroneous findings of fact. The court based its decision to exclude him on erroneous findings of fact. That is abuse of discretion. That requires reversal. Number one, the court says Dr. Goyle only relied on SABR. That's not his testimony. That's not accurate. He testified during the Daubert hearing on August 9, 2021. It's page 189 and 190 of the transcript. I did a comprehensive data review, as he would do in his regular research practice. But he also testified that the SABR study was what he was going to go with absent compelling evidence to the contrary, right? I mean, those were his words. In other words, he's basically saying there's a presumption of causation here until I see compelling evidence on the other side. That seems to be oddly flipped to me. I mean, you're trying to figure out causation and you can't presume it based on a study that says this needs further study. This isn't the end of it for this particular purpose. Sure, and the reference manual says the expert connects those dots. And does that analysis. And he did that. He did the same methodology that the defendants experts did. In fact, their expert, Dr. Abraham, said I agree with Dr. Goyle's methodology. I just disagree with how he weighed the evidence. Because Dr. Goyle did give SABR the most weight. But he testified and he did a comprehensive review. My number two is, and it goes to your question, he didn't ignore other human data. He outlined the reasons he gave that data less weight. What's the best case that you're going out to uphold your position here? That the district court made an error here? Or is there such a case? Well, let's see, it's the Hardiman case and the Lavector case that we cited in our brief, say that where there is erroneous findings of fact, where that results in the expert being excluded, that's abusive discretion. Dr. Goyle did not just rely on SABR. He testified otherwise. SABR is not junk science. But he looked at the other studies too. He considered those. He identified critiques and criticisms and explained why he gave those observational, I'm sorry. I mean, there are all these observational studies. There's nothing that seems to replicate what SABR said. He basically just concluded they weren't compelling enough. I mean, he doesn't have a lot of analysis in the rebuttal report about why he was kind of discounting them. I would have thought you'd have a little bit more kind of meat on the bones. Sure. In the Daubert hearing, during his testimony, he testified specifically about limitations of those observational studies with respect to heart failure. For example, the observational studies looking at heart failure did not have that rigorous, specific, predefined definition of heart failure that a gold standard randomized controlled trial has. That's why observational studies are lesser on the totem pole. They are farther down. He explained these observational studies have the varying definitions. They don't have predefined definitions of heart failure like a randomized controlled trial does. They look at cardiology retrospectively, unlike an RCT that's getting that data as you go along. So he did. And that's pages 158, 164, and 165 from the Daubert transcript on August 9. It's also on August 10, page 216. Those criticisms. So he didn't just say, I'm giving them less weight just because I want to, just because I like SABR. He said, I'm giving them less weight for these reasons. He talked about his experience. Over 100 manuscripts published. And he talked about most of those are from observational studies. That he has a lot of experience with those. And there are some inherent limitations with respect to observational studies. But he also got more. But even if we accept all of what you're saying there, that he had good reasons for not accepting some of the things that the other experts were saying, if he was able to rule all of that stuff out, what is the thing that you can point to that the court should have said, oh, but his reliance on this and this methodology is something that can reliably show general causation. Still back to SABR? Well, SABR is reliable. It's not junk science. Daubert is meant to keep out junk science from the jury. No one is calling SABR junk science. They've not said that. I don't think they're going to. That's the study they submitted to the FDA that prompted the FDA to mandate the label change. Daubert didn't call it junk science either. Nobody's saying it's junk science. I mean, I think everybody is saying it's not junk science, but in order to get the ball over the goal line, we need a little bit more. So what is the score? And he used the same methodology that their expert used. Okay, so he uses Bradford Hill or whatever. Everybody uses it, right?  Okay, fine. That's an accepted method. Right. The district court said, well, wait a minute. You changed your mind on two of these things. You're relying on animal studies, but you're not an expert in animal studies. You're categorizing the TZD drug differently than the DPPs or whatever. I mean, she's got a list of things that seem pretty comprehensive, so I'm not sure how we're going to make this link between SABR and getting the causation. Well, because the court relied on erroneous findings of fact, that's abuse of discretion. Even just one of those should get us reversed and remanded. But to answer your question, he used that same methodology. Just because SABR had not been replicated, you asked about that as well, it would be unethical to replicate SABR. There's no law that replication is not the law. Of course, scientists will agree that replication is a great thing. And when Dr. Boyle answered that question, he said, for scientific pursuits, yes, I think replication is important. But he said, I have sufficient evidence to give the opinion that saxagliptin, more likely than not, can cause heart failure. As to, did he change his opinions? We dispute that. I'm sorry. Let's say that you don't need replication. And let's say that, well, we have a dangerous drug, so we really don't want a chance replicating it, right? But you've got observational studies, right? That would be the next thing to kind of look at? None of them seem to back up the claim of causation, right? Right. That weighing of the science, though? That's not for the district court. That's not for the gatekeeper. That's for the experts. And then the jury makes that determination. Which expert is more credible here? Which methodology do I like? You have to have a link between an associational study and causation. And having something like another study or replication would be one way... That would be ideal. Kind of do it. That's what the manual says, even. In fact, the manual seems to require it. So, you know, put that aside. What else have you got? I mean, I don't see other than... I mean, you're saying, well, okay, well, he applied Bradford Hill, and that's kind of where we come out? Well, that's what the district court should look at. As to changing his opinions, those are things for cross-examination. He's got to have a reliable basis. He had that. He had a reliable methodology. Thank you. We'll have your rebuttal. Good afternoon, Your Honors. Paul Schmidt for Appellees. The trial court found three core defects in Dr. Goyle's methodology. One, that he violated scientific principles he admitted with respect to how he addressed SAVER. Two, that he relied on animal data he wasn't qualified to address and that he showed he wasn't qualified to address. And three, that he didn't reliably or consistently apply the Bradford Hill criteria. Any one of those documented methodological errors would justify, would survive abusive discretion review. Collectively, they're an overwhelming textbook case for exclusion that don't depend on any kind of disputed factual finding, that depend on undisputed facts in the record and that are the reason why every court that has looked at them has excluded them. The district court came pretty close to saying you had to have replication. Would you agree that you don't need to have replication? I think it depends on the record. I don't think there's a formal requirement for replication. Would it be error to say I'm rejecting it because there's no replication? It would depend on the record. It could be on some records. That's not the record here, though. And I don't think, in my reading of what the district court did, it didn't come pretty close to requiring replication. What it said was, given what Dr. Goyle said here about the science and given what he did, his use of SAVER was unreliable. He did acknowledge replication is key. He said it's a good general rule of thumb. He agreed with the reference manual statement that it's a good general rule of thumb in science never to rely on any experimental finding until it's been replicated. He agreed with the SAVER authors that their results required replication. Knowing their own limitations of their data, they said, as your Honor referenced, this is an unexpected finding. It requires confirmation. He agreed with that. He then violated his own standards, though, and this is the point, not the replication point, but the violation of his own standards point that I think the district court judge relied on. He violated his own standards in saying, I'm willing to conclude causation from SAVER alone. And the record is very clear that he said he was willing to do that. And in doing that, and this is the second methodological point relating to SAVER that the trial court identified, he disregarded really strikingly broad swaths of scientific evidence where the scientific community tried to do exactly what the SAVER authors suggested they should do in terms of trying to confirm that finding. Other clinical trials involving other DPP-4 inhibitors, the same type of medicine, that's what the SAVER authors had actually said, that's where you should look for that confirmation. None of it showed an effect. Has any other court in the country recognized this expert? I don't believe they have. I think this was his first testimony in this case, and the other courts that have addressed him in the context of this case have excluded him. The trial court below, the California parallel court that was sitting with the trial court below, and then the California Court of Appeals that affirmed that dismissal. If he had a real good expert that was super, everybody would be using him, I think. Yeah. That's the way it goes with products liability. Yeah, but it does speak to, the record on him does speak to this not being a close case. When an expert says, these are my standards, I agree on the importance of replication, I agree on it with respect to this study, and then violates that, and in doing so disregards this broad other range of data with really, and this was important to the court below, with really no articulated basis for doing so other than the general statement that, generally, a clinical trial like SAFER is better than observational data. That's a profound methodological issue. The court found it very important that when he looked at the other data, he didn't just Why is that a methodological issue as opposed to credibility of his work? The other side is going to say, you can cross-examine him at trial and say, did you ignore these observational studies? Yes. Why? I mean, some of that is true, right? Some of this is maybe cross-examination fodder, the changing your mind on the specificity and the biological gradient in Bradford Hill. I mean, is that methodological or is that a cross-examination topic? I think it depends how it happens. If an expert came in and said in their report, here are the five studies I've read. I recognize that they don't support my opinion. Here's why for each study I can say, this study doesn't control, and those are legitimate scientifically articulated reasons that find support in scientific literature. That might be cross-examination. He did the opposite. He didn't talk about the individual studies. He didn't identify defects in the individual studies. He didn't even read some of the individual studies. He didn't address some of them in his report, even categorically. He came in and did the opposite. He said, SABRE alone is good enough for me. Something's got to disprove it and nothing can disprove it because of the standard he set where if it's not the exact same kind of study, he's going to disregard it. That's a methodological issue in terms of how an expert handles the data. When the scientific community looks at this study and they literally try every way available to scientists to see, is this a real finding? They do other clinical trials. They reanalyze clinical trial data, including from some of the SABRE authors. They look at animal data and reanalyze it. They do observational studies. The FDA itself does observational studies. And Dr. Goyle agreed, none of that data supported him. When an expert disregards that without having a scientific basis, that's a profound methodological issue. And the court below was able to cite. Do you think the Eighth Circuit came pretty close to saying an associational study is enough in that Bayer case, whatever it is, you know, the case I'm talking about? Bayer-Hooker. Yeah. I mean, it seemed like they were saying, hey, this associational study. I mean, it seems like there's got to be a link, too. But it didn't seem like a high bar, maybe. Or maybe I'm misreading the case. I don't know if Bayer-Hooker would be decided the same way with the amendment to Rule 702. But it's still very different from this case in that in Bayer-Hooker, the expert looked at a study and looked at mechanistic data and put that together to give an opinion. And that's what the Eighth Circuit blessed. Because you reminded me of this question. We're evaluating this case under the old rule or under the new rule? It's a good question. There have been cases at the district court level that have applied the new Rule 702 in expert rulings. I think for our purposes it doesn't matter because the notes to Rule 702 make. I mean, they just went into effect on Friday. Yes. And that's why courts have been applying it before. Because the notes to the amendment make very clear that it's intended to codify existing practice of courts who are engaging in full gatekeeping and fully putting proponents of expert testimony to their obligations to prove the admissibility of it. That's exactly what Judge Caldwell did here. So it's consistent with Rule 702. Oh, okay. So you think she effectively applied what the new rule is? Yes. I think the rule is a codification of practices like hers, practices like the case from the Second Circuit, the Morena decision, practices like the McLean decision from the Eleventh Circuit. The earlier rule is what we're going on, isn't it? It's actually not. It's not something that the parties have briefed. The rule as it's been enacted is what Judge Caldwell applied. And the advisory committee or the committee enacting the rule made clear that it wasn't intending to change the standards. It was intending to clarify existing practice, practice being applied by judges like Judge Caldwell. Why do you think the Eighth Circuit case would come out differently then? Because I think, as Your Honor notes, it's a close case. It's still very far away from this case in terms of, in that case, the expert put data together. In this case, the expert disregarded data, looked at Sabre only and said, I'm good relying on that study only and disregarding everything else. That's a different scenario from Bear Hugger. But why doesn't, if that's what he did, why doesn't that just make his opinion very weak? And like Judge Nalbandian said, just make this subject to cross-examination, which I would think, at least for the trial attorneys, would be something that they would love to do to pick apart the opinion. It's the basic Rule 702 requirement. Rule 702 requires a coherent methodology. He didn't have one. He said, these are the standards, but I don't apply them here. Rule 702 requires that an expert base their opinion on sufficient facts or data. He didn't do that. As Judge Caldwell found, he disregarded broad swaths of the scientific data. He disregarded the scientific community's attempt to answer the Sabre call, to see if that finding was real, to see if it could be confirmed in any study. It couldn't. It disregarded core methodological practices of considering contrary evidence, or in his case failing to consider contrary evidence, of exceeding the conclusions of study authors as he did with Sabre. When the authors say, we know our data, this is the limitation, and he says, I know better. I'm going to conclude causation from this study alone. That's a methodological issue that's well recognized in the case law, including the McLean case I mentioned a moment ago. And that carried through to what he did with the animal studies. It's probably the most fundamental indicator of unreliability. The net expert says, these animal studies are important to me. He backed away from that a little bit at the hearing, but in his report there's nothing other than Sabre he cited more than animal studies. He then admitted about a dozen different ways he wasn't qualified to interpret them. And he proved that by making a profound error, using animal data for the wrong drug, and never fixing it. Saying in his deposition, I'd like to fix that, and never fixing it. He proved that with Bradford Hill, where he admitted he was doing something different than the Bradford Hill criteria as they were written. As the appellant said in their reply brief, he was doing something modern with them. And he proved that that was standard list because he flip-flopped on at least a third of how he applied the criteria. And where he did apply them consistently, the only consistency was advocacy. Using reasoning that's self-evidently unreliable, saying I can look to this one type of drug called TZDs and say, those are similar to Onglyza, those cause heart failure, therefore Onglyza must. Even though he can't say that Onglyza is similar to those drugs in any way, and even though he's got to ignore the drugs that Onglyza really is similar to, because of course they don't show a heart failure risk. Those are core methodological issues that Judge Caldwell invoked in excluding him. I do want to save just a moment, if I may, for the procedural points. The appellants don't address the new expert point in their reply brief, so I'll stand on our papers on that issue. But as to the argument they've made that they could proceed without an expert, there's undisputed case law and an undisputed case law finding by Judge Caldwell that every jurisdiction requires expert testimony in a complicated case like this. And they've never cited a case to the contrary. They've cited cases where they say, well, maybe we'll assume that it's not required and see what happens and dismiss on another basis, but no case where. There are fewer. How many cases are there in this MDL? I think it's in the order of 200, Your Honor. Is there one from every state? I don't think there is. I think we briefed every state for the sake of completeness, but I have in my head 37, and I might be wrong on that. But it was not one for every state. Judge Caldwell, I think, did one better. Is there one from Kentucky? Is this a Kentucky case? It's a Kentucky case, but I think the parties operated under the assumption that the home state law where every plaintiff was from would govern, and the plaintiffs were from across the country. What is the California case cover? Just California, or is it another state? It's just California plaintiffs, and it's applying the California expert standard, Sargon, which is conceptually the same as the Rule 702. But those are individual California cases. Individual cases from California state court, like a state MDL, is that what that is? Exactly. Yes. And the hearing was joint? Yes. With the same expert, but jointly under the Eastern District of Kentucky and the whatever California district it was? Yes, and what's interesting about that, the judges sat together, the judges ruled on objections at the hearing together. They both issued distinct opinions that obviously overlap, but two different jurists come into exactly the same conclusion for largely but somewhat distinct sets of reasons, and then of course the California Court of Appeal doing the same. How does the California standard relate to Dawbert and Rule 702? Are they basically the same, or are there some differences? They're basically the same. I think if you talk to practitioners, especially when I've talked to plaintiff lawyers on the other side, they would say California has a little more liberal standards for admissibility. Even under that, he was kept out, but conceptually reading the standard, they're the same. In terms of a focus on methodology, are there sufficient facts supporting, sufficient data supporting the opinion? This record, I think, highlights why that expert testimony is required in terms of what they want to go to the jury with, not having Dr. Goyle. They have an expert, Dr. Wells, who they touted his credentials. He looked at the record and said, I can't conclude causation because this is too complicated for me. Do you think that's part of a state's substantive law, whether expert testimony is required? Yes. Why is it not procedural and something that would be governed by federal law? I think it's an element of proof in terms of what does it mean to prove general causation and how can it be proved. But it's not really an element of the cause of action, is it? Well, it's not a formal element, but it's a state law's interpretation of how a core element of the case has to be proven. But it's kind of like, right, isn't that procedural? You can use certain kinds of evidence. I'm relying on certain kinds of evidence. It's not a substantive requirement, like this is what I have to prove. That would seem to me to be getting closer to a procedural requirement that we would just apply federal common law or something. Yeah, I see the basis for Your Honor's question. It has been treated as substantive by the states. It's been treated as substantive by federal courts. I think that your friend on the other side wouldn't dispute that it's procedural, that it's substantive. They haven't until now through pretty extensive briefing. I think it's been viewed as wrapped up in this question of how do you prove. Okay.  Thank you. Thank you for your honor. Thank you, Your Honor. I appreciate your time. Rebuttal. Thank you. You asked counsel about the Bear-Hugger case. The Bear-Hugger case is a great case to look at because in that case, there's also a product liability, MDL. They're also just looking at general causation. They had three general causation experts there that were excluded. They all relied on one study, also similar here, except our expert looked at everything. But it was the one study that was an observational study that the court made the mistake on the district court there. It was not even a gold standard randomized control trial. It was an observational study. And the authors of that study kind of said similar things to what the authors of SABR said. More research is needed, that kind of thing. And the 8th Circuit overturned that and said if there's a reliable foundation and a methodology, this should go forward. And that's what this circuit has said, this court has said. The court said that study wasn't enough. There had to be more. And the expert had cited some other studies, as I recall, some other things that kind of helped it along. I think the point in this case is it doesn't seem to match up with that case in terms of the additional stuff. All you have is the one study. Well, in addition to looking at everything, we also talked about the American Heart Association, the American College of Cardiology, these other authorities on cardiology in this country, the leading authorities, came to the same conclusion as well. He was not on it. Did they come to the same conclusion because they did their own research or because of what SABR said? Well, they looked at SABR. I mean, there's a reason the RCT is at the top of the hierarchy. It is the gold standard. So the weighing, do 5 or... There's one thing I can take away from this argument is that that is the gold standard. Do 5 or 10 observational outweigh that? That's a question for the jury. What I'm saying is it's the gold standard and you have 5 people, the government, your friends on the other side. People are taking it seriously. That's why there's a label. That's why... Okay, fine. We need a little bit more. Don't we need to get to causation? We want the government to be cautious, right? About... I mean, that's not the causation standard, whether there's gonna be a label put on something, right? You agree with that? Sure. And the American Heart Association is probably pretty cautious too, trying to warn people, maybe. But again, that's not causation. Right. The expert does that. And if he has a reliable foundation, and that's what this circuit has said, if he has a reliable foundation, it's not unsupported speculation. It's not assumptions or guesses. Challenges about is he right or wrong or do 10 observational studies outweigh this study, those are questions for the jury. Those challenges go to the accuracy of his conclusions, not the reliability. To hold that he's relied on this study solely when he said he didn't, that's an abuse of discretion. That's an erroneous finding of fact. When he said, here's the methodology that I applied. When he said, here are the reasons that I gave less weight to these observational studies. When he said, yes, I agree as a researcher, he runs a research program funded by the National Institute of Health. He said, yes, as a researcher, we want replication. But that doesn't mean he doesn't have enough evidence to have a reliable opinion in this case as to saxagliptin. Do you have a position on Rule 702, what version, if we should apply, and whether it matters? I do think the amendment is made to prevent the misapplication of 702. I don't think there's a substantive change there as far as Dr. Goyle. He had a reliable application. He had a reliable basis. So it doesn't matter what version of Rule 702 we apply, you would prevail, I take it? Well, the change to... I'm sorry. That's your argument. Do you think... Did Judge Caldwell apply what was effectively the current rule, do you think? No, I think the current rule is to prevent that misapplication of the principles and method of the facts in the case. I think Judge Caldwell applied the old rule. I do think we prevail under either rule. Dr. Goyle's application was reliable. Do you have a position on whether a causation expert is required under all of the relevant state laws that would apply here? Well, this Court over plaintiff's objection bifurcated discovery. Normally, you're not just having general discovery and then specific causation discovery. So this Court did not do an analysis for every state. This Court? Judge Caldwell. Judge Caldwell, okay. The District Court, I apologize. I mean, maybe I screwed up too, but I'm... But no court has ever recognized this witness to testify. He's a first-timer, that's true. That's true, but having just one that's a first-timer, does it make him any less reliable than paying five experts to say something different? Again, he had a reliable basis, he had a reliable methodology, and that should not strip these 200-plus plaintiffs from their right to a jury trial just because other people disagreed. Okay, thank you. Thank you. Thank you to both of you for your briefs and your arguments. The case will be submitted.